```
                                        ┌─────────────────────────────┐
                                        │ USDC SDNY                   │
                                        │ DOCUMENT                    │
                                        │ ELECTRONICALLY FILED        │
                                        │ DOC #:                      │
                                        │ DATE FILED: 5-23-14         │
                                        └─────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
ROBERT CUMBERLAND,                    :
                                      :
                Petitioner,           :   08 Civ. 04389 (LAP) (DF)
                                      :
        -against-                     :   ORDER ADOPTING REPORT
                                      :   AND RECOMMENDATION
                                      :
HAROLD D. GRAHAM,                     :
                                      :
                                      :
                Respondent.           :
------------------------------------x

LORETTA A. PRESKA, Chief United States District Judge:

On December 8, 2008, pro se petitioner Robert Cumberland ("Cumberland" or "Petitioner") filed an Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, seeking relief from his 2004 New York state court criminal conviction. (See Amended Petition, dated October 27, 2008 ("Amended Petition" or "Am. Pet.") [dkt. no. 25].) On August 5, 2013, Magistrate Judge Debra Freeman issued a Report and Recommendation (the "Report" [dkt. no. 26]), which recommended that the Petition be denied. Petitioner submitted objections to Judge Freeman's Report and Recommendation on December 2, 2013 [dkt. no. 33]. For the reasons stated below, the Report and Recommendation is ADOPTED, and the Amended Petition is DENIED.

I.   BACKGROUND

    A.   Procedural History

        1.   Criminal Trial[1] and Sentencing

Petitioner was tried for violently raping three women—referred to as "M.G.", "H.C.S.", and "P.E." in the Report—between 1997 and 2002.[2]  On March 31, 2004, a jury convicted Petitioner of two counts of first-degree rape, three counts of first-degree sodomy, three counts of second-degree kidnapping, three counts of first-degree sexual abuse, two counts of third-degree robbery, and one count of second-degree assault.  (See Report, at 1 n.1, 12-13.)  Petitioner was subsequently sentenced to "eight indeterminate 25-year prison terms for the rape, sodomy, and kidnapping counts, three indeterminate seven-year prison terms for the sexual abuse charges, and two indeterminate prison terms of from two and one-third to seven years for [the] robbery charges."  (Id. at 13 (citation and internal quotation marks omitted).)  The sentencing court imposed the sentences consecutively, with the exception of the sentences for the

---

[1]  Petitioner was convicted following a second trial.  His first trial ended in a mistrial.  (See Declaration of Alyson J. Gill in Opposition to Petition for a Writ of Habeas Corpus, dated Jan. 26, 2009 [dkt. no. 14] ("Gill Decl.") Ex. F, at 4 n.1.)

[2]  The Report includes a complete factual background of the case detailing the attacks against the victims, the subsequent police investigation, and the arrest of Petitioner.  (See Report, at 3-9.)

kidnapping convictions, which were imposed concurrently, resulting in a total sentence of from 175 and two-thirds to 185 years. (Id.)[3]

### 2. First Section 440.10 Motion to Vacate Judgment

On April 16, 2005, Petitioner moved to vacate his guilty verdict pursuant to New York Criminal Procedure Law section 440.10. (Id. at 14; see also Gill Decl. Ex. A.)  In the motion, Petitioner alleged violations of his Fourth, Sixth, and Fourteenth Amendment rights. (See Report, at 14.)  The trial court summarily denied the motion on July 19, 2005, "[f]inding that the grounds for each portion of the motion were included in the trial record," and thus should be raised on direct appeal. (Id. at 14; see also Gill Decl. Ex. C.)  Petitioner's request for leave to appeal this decision was denied on November 10, 2005. (See Report, at 14.)

### 3. Direct Appeal

On direct appeal[4] to the Appellate Division, First Department, Petitioner argued: "(1) that the trial court conducted the criminal proceedings in a biased manner, denigrating defense counsel in front of the jury and holding the

_____

[3] Petitioner's sentence appears to have later been reduced to fifty years pursuant to New York Penal Law section 70.30. (See Report, at 13 n.10.)

[4] Petitioner was represented by counsel on direct appeal. (See Report, at 14.)

two sides to different standards, and that this treatment violated Petitioner's right to due process; (2) that the trial court erred in admitting [a] knife because no foundation had been laid, and erred in permitting the prosecutor to ask questions about the knife that incorporated hearsay and matters not in evidence; and (3) that Petitioner's kidnapping convictions should be dismissed under the merger doctrine." (Id. at 14-15 (citations omitted); see also Gill Decl. Ex. F.) On February 26, 2006, Petitioner filed a pro se supplemental appellate brief on direct appeal, which argued many of the same points he had raised in his earlier section 440.10 motion. (See Report, at 15; Gill Decl. Ex. G.)

On October 19, 2006, the Appellate Division overturned Petitioner's kidnapping convictions, finding that "all three kidnapping charges merged with the underlying crimes." People v. Cumberland, 33 A.D.3d 483, 484 (1st Dep't 2006). The Appellate Division affirmed Petitioner's conviction in all other respects because "[t]he [trial] court's conduct did not deprive [Petitioner] of a fair trial" and "the [prosecution's evidentiary] error d[id] not warrant reversal in view of the court's instructions and the overwhelming evidence of [Petitioner's] guilt." (Id.) The Appellate Division rejected the claims raised in Petitioner's pro se supplemental brief as

4

"unpreserved" and noted that if it "were we to review these claims, we would reject them."  (Id.)

On December 20, 2006, Petitioner submitted a letter pro se seeking leave to appeal to the New York Court of Appeals.  (See Report, at 16; see also Gill Decl. Ex. K.)  The Court of Appeals denied leave to appeal on February 1, 2007.  See People v. Cumberland, 8 N.Y.3d 879 (2007).

### 4. Second Section 440.10 Motion to Vacate Judgment

On January 20, 2006, while Petitioner's direct appeal was still pending, Petitioner filed a second section 440.10 motion to overturn his conviction.  (See Report, at 17; see also Gill Decl. Ex. N.)  Petitioner alleged that he was deprived of his right to effective assistance of counsel during his trial.  (See Report, at 17.)  The trial court denied the second 440.10 motion on May 30, 2006, determining that Petitioner's trial counsel provided effective assistance of counsel under both state and federal standards.  (Id.; see also Gill Decl. Ex. P.)  The Appellate Division denied Petitioner's application for leave to appeal the denial of the second section 440.10 motion on August 2, 2006.  (See Report, at 18.)

### 5.  Petition for Writ of Error Coram Nobis

On July 28, 2007, Petitioner moved for a writ of error coram nobis, alleging ineffective assistance of counsel in connection with his direct appeal.  (See id. at 17-18; see also

5

Gill Decl. Ex. R.)  The Appellate Division summarily denied Petitioner's coram nobis petition on December 20, 2007.  (See Report, at 19.)  The New York Court of Appeals denied Petitioner's application for leave to appeal on February 29, 2008.  See People v. Cumberland, 10 N.Y.3d 763 (2008).

### 6.  Petition for Writ of Habeas Corpus

On March 27, 2008, Petitioner filed an application for a federal writ of writ of habeas corpus.  (See Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, dated Mar. 27, 2008 [dkt. no. 2] ("Petition").)  With leave of the Court, Petitioner subsequently filed an amended petition.  (See Am. Pet. [dkt. no. 25].)  In his Amended Petition, Petitioner argues that his conviction should be vacated on the following grounds:

(1)  the trial court conducted the state proceedings in a biased manner, thereby violating Petitioner's right to due process of law (see Am. Pet., App'x at 12-15);

(2)  the prosecution engaged in misconduct, violating Petitioner's right to a fair trial, by (a) commenting on Petitioner's exercise of his constitutional right not to submit voluntarily to DNA testing (see id. at 16-17), and (b) introducing improper evidence at trial and asking improper questions about the evidence (see id. at 17-19);

(3)  trial counsel was ineffective because he failed to [(a)] subpoena witnesses with knowledge relevant to the incident involving victim M.G., [(b)] cross-examine M.G. effectively, and [(c)] preserve the Fourth Amendment issue regarding Petitioner's alleged attempts to hide his DNA (see id. at 20-25);

(4)  appellate counsel was ineffective for failing to raise, on appeal, a claim of ineffective assistance of trial counsel, and for failing to argue that Petitioner's

> convictions regarding the attack on victim H.C.S. were
> against the weight of the evidence (see id. at 25-27);
> and

(5)   Petitioner's indictments for the attack on M.G. violated
the New York statute of limitations, as well as the
federal statute which, Petitioner claims, preempts the
state limitations period (see id. at 27-30).

(Report, at 20.)

In her Report, Judge Freeman recommends that Petitioner's
Amended Petition be dismissed in its entirety.  (Id. at 55.)
The Report also recommends that the Court decline to issue a
certificate of appealability pursuant to 28 U.S.C
§ 2253(c)(1)(A) on the grounds that "Petitioner has not 'made a
substantial showing of the denial of a constitutional right.'"
(Id. (quoting 28 U.S.C. § 2253(c)(2)).)

II.   DISCUSSION

A.   Legal Standards

1.   Standard of Review

In reviewing a magistrate judge's Report and
Recommendation, the Court "must determine de novo any part of
the . . . disposition that has been properly objected to.  The
[Court] may accept, reject, or modify the recommended
disposition; receive further evidence; or return the matter to
the magistrate judge with instructions."  Fed. R. Civ. P.
72(b)(3).  Because Petitioner is proceeding pro se, the Court
must broadly construe his claims and objections and interpret

them "to raise the strongest arguments they suggest." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

### 2.   Federal Habeas Review

Federal courts may not consider any claim presented in a petition for a writ of habeas corpus unless the petitioner has exhausted all available state court remedies. See 28 U.S.C. § 2254(b)(1)(A). Once all state remedies have been exhausted, a federal court must review a petitioner's claims pursuant to the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). See id. § 2254(d).

Under AEDPA, a Court may not grant a writ of habeas corpus for any claim "adjudicated on the merits" in state court unless the prior adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id.

### 3.   Procedural Default

Federal courts may not review questions "of federal law decided by a state court if the decision of that court rests on a state court ground that is independent of the federal question and adequate to support the judgment. This rule applies whether the state law ground is substantive or procedural." Coleman v.

8

Thompson, 501 U.S. 722, 729 (1991) (citations omitted).  The

adequate and independent state grounds doctrine restricts a

court from considering an issue on federal habeas review "as

long as the state court explicitly invokes a state procedural

bar rule as a separate basis for decision."  Harris v. Reed, 489

U.S. 255, 264 n.10 (1989).

Once a petitioner's claim is found to be procedurally

barred from federal habeas review, a Court may only consider the

claim if the petitioner can overcome the procedural bar.  See

Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).  To overcome

a state procedural bar, a petitioner must show either (1) cause

for failing to raise his claim properly in state court and

prejudice resulting from the alleged constitutional error, or

(2) that the failure to address the claim on habeas review would

result in a "fundamental miscarriage of justice."  Coleman, 501

U.S. at 750.  "The miscarriage of justice exception is concerned

with actual as compared to legal innocence."  Calderon v.

Thompson, 523 U.S. 538, 559 (1998) (internal quotation marks and

citations omitted).

B.   Analysis of Petitioner's Claims

    1.   Judicial Bias Claims

Petitioner claims that the trial court repeatedly prejudiced his defense and deprived him of his right to a fair trial through "disparate treatment" of the prosecution and defense counsel.  (See Am. Pet., at 12-18.)   The New York Supreme Court, Appellate Division, rejected Petitioner's claims of judicial bias on the merits, concluding that "[t]he [trial] court's conduct did not deprive [Petitioner] of a fair trial." Cumberland, 33 A.D.3d at 483.  Petitioner's claims of judicial bias have therefore been exhausted in state court (see Report, at 25-26) and are subject to review under AEDPA.  See 28 U.S.C. § 2254(b)(1)(A).

    a.   Legal Standard

"[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."  Liteky v. United States, 510 U.S. 540, 555 (1994).  However, improper bias and partiality will be found if the remarks "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible."  Id. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."  Id.

b.    Findings of the Report

The Report recommends dismissal of Petitioner's judicial

bias claims because Petitioner has failed to show that the

Appellate Division's ruling was either contrary to or an

unreasonable application of Federal law, or unreasonable in

light of the evidence presented.  (See Report, at 27.)

c.    Petitioner's Objections

Petitioner objects to the Report's findings with respect to

his claims of judicial bias on multiple grounds.  Petitioner

first argues that the findings are "an unreasonable

determination of the facts" and that the Report fails to

consider "the differing standards held during [his] trial."

(Petitioner's Objections, at 6, 9.)  Petitioner cites to

seventeen pages in his state appellate brief that he claims show

"the trial judge's repeated denigration and disparate treatment

in detail."  (Id. at 9; see also Gill Decl. Ex. F, at 37-54.)

Petitioner's objections on this point are meritless because

they grossly misstate both the findings of the Report and the

record of the case.  Petitioner claims that the Report "never

once considered" the trial court's alleged "differing standards

held during trial" and "only considered" examples of comments

made to the prosecution.  (Petitioner's Objections, at 9.)  This

comment, however, ignores the Report's acknowledgement that "the

trial court was sometimes critical or disapproving of, or even

11

hostile to defense counsel." (Report, at 27.)  All of the alleged instances of judicial bias that Petitioner cites in his Amended Petition are examples of either judicial rulings adverse to Petitioner's case or "stern and short-tempered . . . efforts at courtroom administration." See Liteky, 510 U.S. at 556.

Petitioner also alleges that the Report fails to consider as evidence of the trial court's bias (1) the original mistrial and (2) the letter of complaint filed against the trial judge by Petitioner's defense counsel prior to the commencement of the second trial. (See Petitioner's Objections, at 6.)  Petitioner claims that his prior mistrial was "due to the trial judge's indiscretion."  However, the record shows that the mistrial was declared after a testifying witness was excused to catch a plane out of the country, due to the death of a family member, before the defense could cross-examine the witness. (See Am. Pet. Ex. C; Gill Decl. Ex. F, at 4 n.1.)  These circumstances fail to suggest any "indiscretion" on the part of the trial court and do not support a claim of judicial misconduct or bias.  Rather, the mistrial appears to have been caused merely by happenstance.

The Court also finds that the letter of complaint filed by Petitioner's counsel to the New York State Commission on Judicial Conduct fails to support a claim of judicial bias. (See Petition Ex. C (Letter from Robert J. Jaffe to New York State Commission on Judicial Conduct, dated Dec. 9, 2003).)  The

letter relates to the first trial and states that the trial judge did not allow defense counsel adequate time to review Rosario materials or prepare to cross-examine a witness that was called out of turn by the prosecution.  (See id.)  Neither of these allegations, however, has anything to do with the claims of judicial bias that Petitioner now asserts, which concern comments made by the court to defense counsel in the presence of the jury during the second trial.

Petitioner also claims that the trial judge failed "to provide curative instructions to the jury to prevent any appearance of partiality or bias."  (Petitioner's Objections, at 7.)  As mentioned above, the trial court's conduct did not rise to a level of bias requiring curative instructions.  However, even if the court's conduct had risen to an unconstitutional level of bias, the record shows that the trial judge instructed the jury that "my responsibility has been to see that you make your decision based on the law.  But don't look to anything I might have said of any indication how you should decide the factual issues in this case."  (Transcript (Volume 3 of 3), at 1185:5-9.)  This instruction sufficed to protect Petitioner from any possibility of prejudice.  See United States v. DiTommaso, 817 F.2d 201, 221 (2d Cir. 1987) (holding that the judge's instruction to the jury that his questioning of defense counsel should not be interpreted to reflect his opinion of the guilt or

13

innocence of any defendant was adequate to cure any allegation of favoritism); see also United States v. Robinson, 206 F. App'x 80, 86 (2d Cir. 2006) (summary order).

Petitioner also alleges that the Report does not liberally construe his pro se claims of judicial bias. (See Petitioner's Objections, at 1.)  This is incorrect.  Nonetheless, under even the most liberal construction, Petitioner has failed to meet the high burden required to show unconstitutional judicial bias. See Reid v. Phillips, No. 04 Civ. 1338(NRB), 2004 WL 1920218, at *4 (S.D.N.Y. Aug. 26, 2004) ("A criminal defendant faces a high hurdle to establish a judge's partiality based on comments made at trial.").

### d.  Conclusion

On de novo review, the Court finds that Petitioner has not shown a violation of his constitutional rights due to judicial bias.  Accordingly the Court adopts Judge Freeman's recommendation and dismisses Petitioner's claims of judicial bias.

### 2.  Prosecutorial Misconduct Claims

Petitioner alleges two specific instances of prosecutorial misconduct during his trial.  First, Petitioner claims that his Fourteenth Amendment right to due process was violated when the prosecution "attempted to convey the message to the jury that they could conclude [P]etitioner's guilt from his failure to

submit to [a] police request [for] a DNA test." (Am. Pet., at 16.) Second, Petitioner claims his Fourteenth Amendment right to due process was violated when the prosecution "deliberately" introduced into evidence at trial a knife they "were well aware of" had "no nexus to their case." (Id. at 17.)

        a.   Legal Standard

    Prosecutorial misconduct violates due process when the act "is so prejudicial as to render the trial fundamentally unfair." Herrera v. Senkowski, 77 F. App'x 549, 551 (2d Cir. 2003) (citations and internal quotation marks omitted). A petitioner is entitled to relief if he can show "that he suffered actual prejudice because the prosecutor's comments . . . had a substantial and injurious effect or influence in determining the jury's verdict." Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998) (internal quotations omitted). In deciding whether alleged prosecutorial misconduct has caused a defendant actual prejudice, a court may consider "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." Id. (internal quotations omitted).

    Pursuant to New York's preservation rule, parties are required to raise specific contemporaneous objections to a trial court's rulings before challenging them on appeal. See N.Y.C.P.L. § 470.05(2). New York courts have repeatedly found

that in the absence of objections during trial, a criminal defendant's due process and prosecutorial misconduct claims are not preserved for appellate review.  (See Report, at 29 (citing, e.g., People v. Harris, 98 N.Y.2d 452, 491 (1998); People v. Hooper, 732 N.Y.S.2d 207, 208 (4th Dep't 2001).)

The First Department found that Petitioner's first prosecutorial misconduct claim is "unpreserved and we decline to review [it] in the interest of justice.  Were we to review th[is] claim[], we would reject [it]."  Cumberland, 33 A.D.3d at 484.  The finding that Petitioner's argument was "unpreserved" is sufficient to establish that the court relied on a procedural bar as an independent ground in disposing the issue.  See Guity v. Ercole, 07 Civ. 0728(RPP), 2007 WL 3284694, at *7 (S.D.N.Y. Nov. 6, 2007).  As for the second prosecutorial misconduct argument regarding the prosecutor's questioning about the knife, the First Department found that while "the People should not have asked questions that assumed facts not yet in evidence, we find that the error does not warrant reversal in view of the court's instructions and the overwhelming evidence of defendant's guilt.  We have considered and rejected defendant's remaining arguments concerning the knife."  Cumberland, 33 A.D.3d at 483-84.

b.    Findings of the Report

Regarding Petitioner's first claim of prosecutorial misconduct, the Report states "there is no basis . . . to find that the state's preservation rule was inappropriately applied in this case . . . as nothing in the record suggests that the prosecutorial-misconduct claims that Petitioner raises here were, in fact, presented at trial." (Report, at 29-30.)  Thus the Report rejects the first prosecutorial misconduct claim, finding that Petitioner has failed to overcome his procedural default.  (See id. at 30-32.)

As for the second prosecutorial misconduct claim, the Report finds that this claim had been exhausted in state court and therefore must be reviewed under AEDPA's standard of review. (See id. at 32-33.)  The Report notes that Petitioner was charged with two counts of first-degree robbery (requiring the use of a weapon) but was acquitted of those charges and instead convicted of two counts of Robbery in the Third Degree (not requiring the use of a weapon).  (See id. at 33-34.)  Thus Petitioner was not prejudiced by the introduction of the knife at trial because the jury acquitted Petitioner of all charges related to the use of the knife.  Instead, he was convicted, by a mountain of evidence, of charges that did not require the use of a weapon.  The Report recommends a finding that the Appellate Division did not unreasonably apply federal law and that it did

17

not make an unreasonable determination of the facts in finding
that Petitioner was not deprived of fair trial.  (See id. at 34;
see also 28 U.S.C. § 2254(d).)

### c.   Petitioner's Objections

Petitioner objects to the Report's findings with respect to
his first claim of prosecutorial misconduct.  First, Petitioner
argues the trial court interfered with his "defense counsel's
ability to raise a question of law reviewable in the appellate
courts . . . ."  (Petitioner's Objections, at 12.)  Second,
Petitioner contends that the Report fails to consider the
relevant law cited in Petitioner's Affidavit in Reply to
Respondent's Opposition to Petition for a Writ of Habeas Corpus
([dkt. no. 16.] "Reply Affidavit").  (See id. at 12-13.)

Even if Petitioner's trial counsel had objected to the
prosecution's alleged misconduct at trial, and therefore
preserved the issue for appellate review, Petitioner's first
claim of prosecutorial misconduct would still be dismissed.
Prosecutorial misconduct, if harmless, does not warrant reversal
of a conviction and the granting of a new trial.  See United
States v. Elias, 285 F.3d 183, 190-92 (2d Cir. 2002) (finding
that "although the prosecutor's remarks were improper, they did
not result in substantial prejudice to [the defendant] or
deprive him of a fair trial").

Petitioner alleges that the prosecution made reference to Petitioner's refusal to consent to a DNA test during the prosecution's opening and closing statements. (See Petitioner's Objections, at 14.) Nevertheless, because the jury was instructed that the statements were not to be considered as evidence, this subsequent curative instruction rendered the alleged error harmless. See id. at 192. Moreover, the facts of the case as a whole render any reference to Petitioner's refusal to give DNA harmless because the evidence overwhelmingly supported Petitioner's guilt. See id.

Also, the caselaw Petitioner invokes is unavailing. Petitioner cites cases to show that it is constitutionally impermissible for the prosecution to comment on a defendant's refusal to consent to the DNA test. (See Petitioner's Objections, at 13-16.) However, even assuming that the prosecution's comments were constitutionally impermissible, Petitioner has failed to show that these comments caused him "actual prejudice." Tankleff, 135 F.2d at 252.

d. Conclusion

Petitioner's first prosecutorial misconduct claim is without merit because the state court rejected it on adequate and independent state grounds and, in any event, Petitioner suffered no prejudice. Petitioner's second claim of prosecutorial misconduct must also be dismissed because

19

Petitioner suffered no prejudice.  Accordingly, the Court adopts the findings of the Report and dismisses Petitioner's prosecutorial misconduct claims.

### 3.   Ineffective Assistance of Trial Counsel Claims

Petitioner also claims that he was deprived of his right to effective assistance of counsel at trial.  (See Am. Pet., at 20.)  Petitioner alleges various examples of ineffective assistance, including his trial counsel's failure to investigate certain facts, failure to subpoena certain witnesses, failure to introduce certain testimony, failure to highlight for the jury contradictions between the testimony of several witnesses, and failure "to preserve his objection to the prosecution's use of his . . . Fourth Amendment exercise as evidence of guilt."  (See id. at 20-25.)

### a.   Legal Standard

"When a convicted defendant complains of the ineffectiveness of counsel[] . . . the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  To evaluate whether a defendant has made such a showing, Strickland sets forth a two-pronged test.  The defendant must show (1) "that counsel's performance was . . . so deficient that in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally

competent assistance;" and (2) "that the deficient performance prejudiced the defense in the sense that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Bennett v. United States, 663 F.3d 71, 84 (2d Cir. 2011) (internal quotations omitted) (citing Strickland, 466 U.S. at 687, 690, 694).

The first Strickland prong, regarding whether an attorney's representation was constitutionally deficient, is measured "simply [by] reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688.  Under the second Strickland prong, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Rosario v. Ercole, 601 F.3d 118.

b.   Findings of the Report

The Report found that Petitioner did not exhaust his ineffective assistance of counsel claims in state court. (See Report, at 35; see also Gill Decl. Exs. A, F, G.)  Ordinarily, a federal court may not a consider habeas claim if it is unexhausted.  See, e.g., Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991)).  The Report explains, however, that "because Petitioner's 'claims are now procedurally barred from presentation to' the state courts, those claims are 'deemed' exhausted for the purposes of federal habeas review" and

therefore the Court may consider them as part of the habeas petition.  (Report, at 37 (citing Grey, 933 F.2d at 120-21 (2d Cir. 1991).)  Nevertheless, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim."  Gray v. Netherland, 518 U.S. 152, 162 (1996).  The Report finds that the ineffective assistance of trial counsel claims are procedurally defaulted and Petitioner has not overcome the procedural bar.  (See Report, at 38-39.)

> c.   Petitioner's Objections

Petitioner objects to the Report's finding that his ineffective assistance of trial counsel claims are barred from consideration on adequate and independent state grounds.  (Petitioner's Objections, at 16.)  Petitioner first argues that an exception applies in his case because the trial court "impeded counsel's efforts to comply with the state's procedural rules."  (Id. at 17 (citations and internal quotation marks omitted).)  For example, Petitioner claims that the trial judge's alleged bias prevented trial counsel from raising objections resulting in a "constructive denial" of effective assistance "which cannot be attributed to counsel."  (Id. at 18 (citing Strickland, 466 U.S. at 683 (noting that the Supreme Court has found Sixth Amendment violations where there is "state

interference with the ability of counsel to render effective assistance to the accused"). Based on the record, however, there is no indication that the actions of the trial court prevented Petitioner's trial counsel from providing effective assistance of counsel.

Petitioner also asserts that his ineffective assistance of counsel claims are not procedurally barred because he raised them either in his supplemental appellate brief or in one of his section 440.10 motions. (See id. at 16-17.) Point III of Petitioner's supplemental appellate brief (which he also alleges is a third 440.10 motion) is titled "THE APPELLANT WAS [DENIED] HIS FEDERAL AND STATE CONSTITUTIONAL RIGHT TO SUBSTANTIATE HIS DEFENSE BY CALLING FORTH WITNESSES AND PRESENTING EVIDENCE IN HIS DEFENSE." (Gill Decl. Ex. G, at 33.) Under this heading, Petitioner alleged that his defense counsel was deficient by failing to oppose "the judge's contention that the CPL did [not] support [the] defense['s] request to subpoena police witnesses." (Id. at 34.) Petitioner argued that this failure to object prejudiced him. (See id.)

In his second section 440.10 motion, Petitioner argued that his defense counsel was ineffective on several grounds. (See Gill Decl. Ex. N.) First, he argued that counsel failed to investigate phone records and the elevators at a location where one of Petitioner's crimes occurred. (See id. at 8-9.) He also

claimed that his defense counsel was ineffective for failing "to
inform the court what section of the C.P.L. entitled him to
subpoena police witnesses." (Id. at 10.)

Dismissal of a habeas claim is required when the evidence
presented in the habeas proceeding fundamentally alters the
claim presented to the state courts. See Caballero v. Keane, 42
F.3d 738, 741 (2d Cir. 1994). All but one of the ineffective
assistance of counsel claims Petitioner now raises in his
Amended Petition were not previously raised in state proceedings
and therefore must be dismissed. (See Am. Pet., at 27-32; Gill
Decl. Exs. G, N.) However, Petitioner's claim of ineffective
assistance based on his trial counsel's failure to subpoena
police witnesses has been exhausted in state court and therefore
is not procedurally barred from consideration by this Court.
This is because Petitioner's claims in his supplemental
appellate brief and his second section 440.10 motion that his
counsel failed to inform the court of the law authorizing him to
subpoena police witnesses is sufficiently similar to his claim
in the Amended Petition that his trial counsel failed to
subpoena police witnesses. Nevertheless, this claim fails under
Strickland.

Petitioner argues that if his trial counsel had subpoenaed
certain police officers, counsel could have used their testimony
at trial to impeach the testimony of victim M.G. whose original

24

statements to police differed from the statements she made at
trial.  (See id. at 28-31.)  A review of the trial transcript,
however, reveals that Petitioner's counsel did in fact question
M.G. during her cross examination about the discrepancies
between her testimony on direct and her original statements to
police.  (See Transcript (Volume 2 of 3), at 631:9-643:9.)  M.G.
responded to these questions by acknowledging that she changed
her original story because she was "disoriented" at the time and
"ashamed" that she had been raped.  (See id. at 633:20; 635:15;
638:14.)  Petitioner thus cannot argue that he was prejudiced by
his counsel's failure to call certain detectives to highlight
M.G.'s inconsistent statements because M.G. herself admitted and
explained the inconsistencies at trial, which the jury
presumably took into account in finding Petitioner guilty of his
crimes.

d.   Conclusion

Accordingly, all of Petitioner's ineffective assistance of
counsel claims, except one, are unexhausted.  These claims are
procedurally defaulted, and Petitioner has failed to overcome
the procedural bar.  Petitioner's remaining claim of ineffective
assistance is also dismissed because Petitioner has failed to
show a reasonable probability that but for his counsel's actions
the result of his trial would have been different.  Thus

Petitioner's ineffective assistance of counsel claims are
dismissed.

> 4.   Ineffective Assistance of Appellate Counsel
>      Claims

Petitioner claims that his appellate counsel provided
ineffective assistance by (1) failing to argue on direct appeal
that Petitioner's convictions for third-degree robbery, first-
degree rape, first-degree sodomy, as committed against victim
H.C.S, were against the weight evidence presented at trial, and
(2) by failing to argue that Petitioner's trial counsel had
provided ineffective assistance.  (Am. Pet., at 25-26.)
Petitioner exhausted these claims because he raised them in his
previous coram nobis petition and then sought leave to appeal to
the Court of Appeals.  (See Report, at 39.)  Because the state
court did not reject these claims on procedural grounds, the
Court reviews the claims pursuant to AEDPA's standard of review.

> a.   Legal Standard

To state a claim of ineffective assistance of appellate
counsel a petitioner must show (1) "that his counsel was
objectively unreasonable in failing to find arguable issues to
appeal" and (2) "a reasonable probability that, but for his
counsel's unreasonable failure to" raise an issue on appeal "he
would have prevailed on his appeal."  Smith v. Robbins, 528 U.S.
259, 285 (2000) (citations omitted).  "To establish prejudice in

the appellate context, a petitioner must demonstrate that there was a reasonable probability that his claim would have been successful before the state's highest court." Mayo v. Henderson, 13 F.3d 528, 534 (2d Cir. 1994) (citations and internal quotation marks omitted).

           b.   Findings of the Report

     The Report found that during Petitioner's criminal trial, the prosecution presented substantial evidence from which the jury could have reasonably concluded that Petitioner committed the alleged crimes against H.C.S., including testimony from H.C.S. herself and several witnesses who observed H.C.S. immediately after the incident.  (See Report, at 42-43.) Because New York law requires an appellate court to give "great deference" to a jury's findings under a "weight of the evidence" challenge, Petitioner was not prejudiced by his appellate counsel's failure to raise such a weak claim on direct appeal. See People v. Bleakley, 69 N.Y.2d 490, 495 (1987) (holding that a court must be "careful not to substitute [itself] for the jury").

     Also, due to the overwhelming amount of evidence presented against Petitioner at trial, there exists no "reasonable probability" that Petitioner's trial counsel could have made additional efforts that would have changed the outcome of the trial.  See Mayo, 13 F.3d at 534.  Thus, Petitioner was again

not prejudiced by his appellate counsel's decision not to raise a weak ineffective assistance of counsel claim on direct appeal.

Neither of Petitioner's claims establishes that his appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Id. at 533.

### c.   Conclusion

Petitioner has not raised any objections to the Report's findings on his claim of ineffective assistance of appellate counsel.  Accordingly, the Court adopts Magistrate Judge Freeman's recommendation and dismisses Petitioner's claims of ineffective assistance of appellate counsel.

### 5.   Statute of Limitations Claim

Petitioner claims that there is a statute of limitations issue with regard to his indictments for the crimes committed against M.G. (See Am. Pet., at 27-30.)  Specifically, Petitioner alleges that he was indicted more than five years after the crimes occurred.  (See id.)  Because it is not clear whether Petitioner raises this issue in support of his claim of ineffective assistance of appellate counsel or raises the statute of limitations claim on its own, the Report liberally construes Petitioner's arguments and considers both alternatives.  (See Report, at 52.)

a.   Legal Standard

At the time of Petitioner's indictment, New York had a five-year statute of limitations for first-degree rape and allowed for tolling of the statute of limitations for up to five years if a criminal's identity or whereabouts was unknown.[5]  (See id. at 52 n.30.)

b.   Findings of the Report

To the extent Petitioner raises the statute of limitations issue in support of a claim of ineffective assistance of counsel, the Report finds that Petitioner exhausted this claim in his coram nobis petition by arguing that his appellate counsel failed to raise a statute of limitations issue on direct appeal. (See Report, at 52; Gill Decl. Ex. R, at 2.)  The Report notes that New York courts "have routinely upheld New York's statute of limitations, including its tolling provision, in cases similar to Petitioner's." (Report, at 53.)  Here, Petitioner's crimes against M.G. occurred on April 1, 1997, but he was not identified by the victims until after his arrest on May 22, 2002 for violating sex-offender registration

---

[5]  New York now allows prosecutions for first-degree rape to be commenced at any time.  See N.Y.C.P.L. § 30.10(1)(a); see also Ramos v. Racette, No. 11-CV-1412(JG), 2012 WL 12924, at *10 n.13 (E.D.N.Y. Jan. 4, 2012) (stating "[o]n June 23, 2006, the New York legislature revised the statute to allow prosecutions for first-degree rape . . . to be commenced at any time") (internal quotations omitted).

requirements.  (See id. at 3, 7-8.)  These circumstances clearly fell within New York's tolling provision.  See, e.g., People v. Ramos, 61 A.D.3d 783, 783 (2d Dep't 2009) (holding that the statute of limitations was not violated in sexual assault case where indictment was filed almost ten years after crime because "the defendant's whereabouts were continuously unknown and continuously unascertainable").

Because New York's tolling exception clearly applies in this case, the fact that Petitioner's indictment occurred slightly more than five years after the alleged crimes does not raise a state law or constitutional issue.  (See Report, at 54.) Petitioner thus cannot claim that his appellate counsel was ineffective for failing to raise a statute of limitations claim on direct appeal.  (See id.)

Interpreting the Amended Petition to raise a freestanding statute of limitations defense, the Report finds that this claim must be dismissed.  (Id. at 55.)  Petitioner never presented a statute of limitations issue to the state courts as an individual claim.  (See id. at 54).  Thus Petitioner's statute of limitations claim is deemed exhausted for the purpose of federal habeas review.  See Grey, 933 F.2d at 120-21.  The Report found, however, that this claim was procedurally defaulted, and Petitioner has failed to overcome the procedural bar.  (See Report, at 55.)

c.   Conclusion

Petitioner has not raised any objections to the Report's findings concerning his statute of limitations claim. Therefore, the Court adopts the findings of the Report and dismisses Petitioner's statute of limitations claim.

III. <u>CONCLUSION</u>

Having considered the objections to Judge Freeman's Report and finding the Report to be well-reasoned and thoroughly grounded in the law after <u>de novo</u> review, the Report [dkt. no. 26] is hereby ADOPTED in its entirety, and Petitioner's request to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2254 [dkt. no. 25] is DENIED.

A certificate of appealability will not issue because Petitioner has not made a substantial showing of the denial of a constitutional right. <u>See</u> 28 U.S.C. § 2253(c)(2). The Court also certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. The Clerk of the Court is directed to mark this case closed and all pending motions denied as moot.

SO ORDERED.

Dated:   New York, New York
         May 22, 2014


_Loretta A. Preska_
LORETTA A. PRESKA
Chief U.S. District Judge